Casey, C. J„
delivered the opinion of the court :
On the 30th April, 1852, the claimants entered into a contract with the Secretary of the Treasury, by which they agreed to erect for the United States eight light-houses, on the coasts of Oregon and California, for the stipulated sum of one hundred and thirty-six thousand dollars ($136,000 ) The materials for these erections were to be procured and prepared on the Atlantic coast by the contractors. When so prepared and ready for shipment, and insured for the voyage, and the policies assigned to the United States, the contractors were to be paid the sum of thirty-five thousand dollars, the estimated cost of these materials, and they thereupon were to become the property of the United States.
The latter were to be at the expense of the transportation, and to be delivered to the contractors at the points designated by the contract for the respective light-houses. With the approval of the Treasury Department and Light-house Board, the contractors purchased the bark Oriole, and shipped the materials on board of her. She arrived safely at San Francisco, where the materials were delivered, as the *357 contract provided, to tbe collector of that port, for the United States. He was to provide transportation thence to 'the sites of the respective liglit-houses. Finding it difficult to charter any vessels, he entered-into an agreement with the claimants, by which he chartered their vessel, the Oriole, for that service, for three thousand dollars per month.
After she had delivered the materials for several of the light-houses, and proceeding on a voyage with that of the others, she was wrecked and totally lost off the mouth of the Columbia river, in the beginning of September, 1853. The first cost of the materials lost by the wrecking of the vessel, in Baltimore, where they were procured and prepared, was ten thousand five hundred and fifty-eight dollars ($10,558.)
The claimants’ agent thereupon returned to San Francisco, reported the loss of the materials to the collector of the port there, and requested him, as the agent and depositary of the United States designated by the contract, to replace such materials, that the contractors might proceed with the erection of the light-houses, as provided by the ■ contract. The collector declined to act in the premises without special authority and instructions from the department at Washington.
The claimants, however, proceeded and purchased the materials and prepared them at San Francisco, and procured and hired the necessary conveyance and transportation. They completed all the lighthouses according to their contract; and having been examined and inspected by United States officers designated for that purpose, they were accepted and turned over to the United States.
The United States paid to claimants the original amount agreed upon for the materials and light-houses; but the department declined to pay for the materials purchased by the claimants instead of those lost on the Oriole, or for the transportation which by the contract was to have been furnished by the United States, but was procured and paid for by the claimants. To recover these the claimants brought suit in this court, in 1S55. Upon hearing, the court ruled that the materials belonged to the United States, and that they must bear the loss of them. It also held that they were liable for the transportation of the various materials from San Francisco to the respective sites of the light-houses, together with some other items.
By either an inadvertence, or for want of proof, the materials were estimated at their cost in Baltimore, while their actual cost in Califor *358 nia was three or four times as great. 'The amount allowed on these two items was as follows :
For materials, the cost in Baltimore. $10, 558
Transportation. 18, 000
28, 558
There were some other allowances for matters notin dispute, which made the aggregate allowance thirty-one thousand one hundred and ninety .dollars and fifty-four cents ($31,190 54.) A hill for this amount was reported to Congress, who approved the finding, and made an appropriation to pay the same, and which was received by the claimants.
The claimants again petitioned Congress for an additional allowance paid for materials at San Francisco, and for the balance of the transportation not allowed them on the former trial. Thereupon Congress passed the following joint resolution :
“ Resolved, fyc., That the papers in the case of Francis A. Gibbons and Francis X. Kelly he referred to the Court of Claims, and the court shall be authorized, if of the opinion that the ends of justice will be served thereby, to grant a rehearing of the same on an amended petition, without prejudice to the claim by reason of the former decision of the court.”
The motion for a rehearing under the joint resolution passed by Congress involves the entire merits of the case. And therefore we have held that motion over until we had before us all the evidence on the one side and the other in relation thereto. The payment of the amount heretofore reported by this court, by a special appropriation, was, of course, a clear and explicit legislative sanction and approval of the principles decided and the justice of the claim. All we have now to do is to determine whether the ends of justice will be served by a rehearing and an additional allowance.
The evidence conclusively establishes the fact, that the materials purchased and prepared at San Francisco cost the claimants from three to four times the amount which the court before allowed to them. The cost of labor and materials in California, according to the undisputed proof, was from three to five times as much as they could be procured for in the east. So the allowance of eighteen thousand dollars for transportation was considerably less than the actual outlay for that item.
We have some difficulty in reference to the kind and character of *359 the testimony offered. Instead of showing what the materials they procured actually cost them, they prove the relative value of such materials and the labor necessary to produce, between the Pacific coast and the Atlantic cities at that time.
Ordinarily, they should have been able to show by their books, accounts, and vouchers, the exact value or price of each thing bought or made to replace those lost by the wreck. They excuse themselves from this by saying that this accident occurred when the claimants were absent in Baltimore. That their agent, having applied to the proper officer and agent of the United States at San Francisco to replace the materials and furnish transportation, as they were bound to do, and he having declined, and their agent being then obliged to go into the market and purchase as best he could, is not to be held to the most rigid and strict proof. That their agent, though a good workman and superintendent, and efficient in every way for the purpose for which he was employed, was not accustomed to the business of making purchases and keeping complicated accounts. Nor was it contemplated when he was placed in charge of the works that it would be necessary to do so, as their material had been provided and the workmen employed at stipulated wages.
There is some force in these suggestions. Yet, making all due allowance for the unexpected situation and circumstances’ brought about by the wrecking of the vessel, the want of specific and definite proof must operate against the claimants. Against such proof, so indefinite and general, we make every intendment, and can only draw such conclusions as we are sure will ’come within the proofs. After carefully considering the evidence, we value the articles purchased in Sau Francisco at three times their cost in Baltimore — this cost the proof made $10,558. Its value therefore, on this basis, would be $31,674. From, this is to be deducted the amount allowed before, viz: $10,558, leaving $21,116 due for material. The transportation we estimate upon the basis of the contract between the collector at San Francisco, the agent of the United States, and the claimants. That was three thousand dollars per month. This, we presume, was fair and reasonable, as it was agreed to on both sides, and furnishes the best evidence of its value. The time was not so clearly proved. The claimants allege they were employed ten months after the wreck of the Oriole, and are' entitled to the agreed rate for that time. The proof fails to show the precise time, and here again we make every intendment against the party whose duty it was to furnish the evidence. From the testimony we cannot be certain that more than seven and a half months’ trans *360 portation was required; and for that period we allow them tbe formerly agreed rate, making $22,500, and from tliat deduct tbe amount received by tbe former award or report of tbis court, viz: $18,000, leaving due on tbis account the sum of $4,500, which, added to tbe balance of tbe materials, $21,116, makes the amount due tbe claimants tbe sum of $25,616.
We think the construction put upon the contract by tbe Treasury Department and the claimant by this court at the former trial, which was approved and affirmed by Congress, confirming the report and appropriating the money to pay the amount, and by the passage of the joint resolution under which it is here now, are executive, judicial, and legislative concurrence in its interpretation, acquiesced in by the claimants, which is not now to be gainsaid or departed from. Adopting that as the true and legitimate construction, we are clearly of the opinion that the ends of justice will be served by granting them a rehearing. And that upon that rehearing they are entitled to recover the sum of twenty-five thousand six hundred and sixteen dollars. And for that sum we direct a judgment to be entered in their favor.